PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHERYL A. KURLINSKI ) | CASE NO. 1:07CV3726 |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | BENITA Y. PEARSON |
| ) | |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OF OPINION** |
| Defendant. ) | **AND ORDER OF REMAND** |

    This is an action for judicial review of the final decision of the Commissioner of Social Security Administration ("Agency") denying the applications of Plaintiff Sheryl A. Kurlinski for Disability Insurance Benefits and Supplemental Security Income (collectively "benefits"). The parties have consented to the jurisdiction of the undersigned Magistrate Judge.

    Having found that the Agency's denial of benefits to Kurlinski was not based upon proper legal standards, the Court reverses the denial and remands this matter for further proceedings regarding the Administrative Law Judge's ("ALJ") evaluation of Kurlinski's credibility, the medical opinions of her treating physicians and the assessment of Kurlinski's residual functional capacity, in a manner consistent with this opinion.

(1:07CV3726)

## I. Overview

At the time the ALJ issued the final decision denying Kurlinski benefits, it was largely undisputed that Kurlinski was a 37 year-old high school graduate who had been stricken with severe physical impairments evidenced by back and diffuse body pain. (Tr. 20 & 700.) Several physicians diagnosed Kurlinski with fibromyalgia, but acknowledged that the diagnosis was not confirmed by objective medical evidence. (Tr. 533, 553, & 593.)

At the date of her hearing before the ALJ, Kurlinski's previous employment consisted primarily of having worked in retail and office management and also as an administrative assistant. (Tr. 701-04.) Kurlinski has maintained a permanent drivers license, but has not driven since 2004. (Tr. 724-25.)

The ALJ found that Kurlinski has the "residual functional capacity to lift, push and/or pull 20 pounds occasionally and 10 pounds frequently, sit for up to 6 hours out of an eight-hour workday, stand and/or walk 6 hours of an eight-hour workday." (Tr. 27.) The ALJ also found Kurlinski able to perform her "past relevant work as an office manager and as an administrative assistant." (Tr. 32.) Consequently, the ALJ found Kurlinski not disabled and not entitled to benefits. (Tr. 33.)

After reviewing the administrative record as a whole, including the medical and other evidence presented, and the legal standards applied, the Court finds that the ALJ relied upon incorrect legal standards in making his determinations regarding Kurlinski's credibility and whether to grant controlling authority to the opinions of her treating physicians. Concomitantly, the ALJ must reassess Kurlinski's residual functional capacity ("RFC"), given that an accurate

-2-

(1:07CV3726)

RFC assessment depends on appropriate determinations having been made regarding all relevant evidence.

## II. Procedural History

Kurlinski applied for benefits on December 23, 2003 and January 9, 2004, respectively, alleging disability caused by back and diffuse body pain since October 4, 2003. The Agency, on July 15, 2004, determined that she was not disabled and not eligible for benefits. Upon reconsideration on January 7, 2005 the Agency again denied Kurlinski benefits. Consequently, Kurlinski requested and obtained a hearing before an ALJ on September 27, 2006, where she appeared with counsel. The ALJ denied Kurlinski benefits on December 21, 2006. Kurlinski appealed to the Appeals Council which denied review on October 18, 2007, causing the ALJ's denial of benefits to be the final Agency decision.

Seeking a review of the Agency's final decision denying her benefits, Kurlinski timely filed a Complaint with this Court and asserted the following issues:

1. Whether the ALJ failed to apply the proper standard in finding that Kurlinksi did not have a severe mental impairment and that Kurlinksi's knee, hip, and foot symptoms and her carpal tunnel syndrome symptoms were not severe impairments [sic]

2. Whether, in determining Kurlinski's RFC, the ALJ failed to follow the requirements of SSR 96-8p which requires an ALJ to take into consideration *all* of the relevant evidence in the case record, including the limitations and restrictions imposed by *all* of an individual's impairments, even those that are found to be "not severe."

3. Whether the ALJ erred by relying upon objective medical evidence to refute Kurlinski's credibility, and as a basis to reject the opinions of Kurlinksi's treating physicians, even though Kurlinski suffers from an impairment – fibromyalgia – which is a medical impairment that cannot be objectively proven [sic]

-3-

(1:07CV3726)

        a. Whether the ALJ failed to follow the requirements of SSR 96-7p, 20 CFR §404.1529(c)(3) and 20 CFR §416.929(c)(3) in finding that Kurlinski's allegations of disabling symptoms were not credible [sic]

        b. Whether the ALJ violated the treating physician rule in rejecting the opinions of Kurlinski's treating physicians, and whether the ALJ erroneously relied upon his own unqualified lay opinion as evidence that was more credible than the opinions of Kurlinksi's treating physicians [sic]

4. Whether the ALJ committed legal error and failed to fully and fairly develop the record by neglecting to recontact treating physicians, and, where necessary, to obtain updated and clarifying information relative to functional limitations, pursuant to 20 CFR §404.1527 and 20 CFR §416.927, SSR 96-5p, and SSR 99-2p [sic]

ECF No. 17 at 2.

### III. Law and Analysis

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Furthermore, judicial review of the ALJ's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The district court may review any evidence in the

-4-

(1:07CV3726)

record, regardless of whether it has been cited by the ALJ.  *Id.*

Because the Court remands this matter, the memorandum focuses on that which the ALJ must reconsider in rendering a decision in accordance with appropriate legal standards.

### A. The ALJ Failed to Properly Evaluate the Medical Opinion Evidence

Chief among the governing standards of the Sixth Circuit by which an ALJ must assess medical evidence is the treating physician rule.  This rule requires an ALJ give greater deference to the opinion of a treating physician than to those of non-treating physicians.  *See* SSR 96-2p; 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If the ALJ does not give the treating physician's opinion controlling weight, then the ALJ must consider several other factors in determining how much weight is appropriate.  Those factors include: (1) the length, frequency, nature, and extent of the treatment relationship; (2) consistency of the physician's conclusions and the evidence to support them; and (3) the specialization of the treating physician.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  The rule also creates "a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding."  *Id.* (*citing* SSR 96-2p).

An additional procedural requirement of the treating physician rule is that the ALJ must provide "good reasons" for discounting a treating physician's opinion with reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p; *See also Wilson*, 378 F.3d at 544.  The significance of this notice requirement is that it ensures a denied

(1:07CV3726)

claimant receives fair process. An ALJ's failure to follow this requirement of providing good reasons "for explaining precisely how those reasons affected the weight accorded the [physician's] opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (*citing Wilson*, 378 F.3d at 544). This Court will evaluate the ALJ's conclusions regarding Kurlinski's medical opinion evidence based upon these standards.

### 1. Kurlinski's Treating Physicians' Opinions

Kurlinski argues the ALJ did not grant controlling weight to the opinions of her treating physicians and did not provide "good reasons" for failing to do so.[1] Specifically, Kurlinski disagrees with the ALJ regarding her physicians' opinions and descriptions of her pain and capabilities due to her fibromyalgia.[2] The ALJ provided narratives (sometimes extensive narratives) of numerous physician's findings, including the three (3) treating physicians mentioned in footnote 1. The ALJ's reasons and analysis for finding Kurlinski's treating physicians' opinions "unpersuasive" and "lack[ing] any probative weight" did not, however, conform with the standards of the treating physician rule at best and were illogical at worst. (Tr. 31.)

Dr. Bullard noted on April 12, 2005, that Kurlinski's physical status "would be a

---

[1] Defendant does not contest that Drs. Bullard, Atreja, and Mossad are Kurlinski's treating physicians.

[2] Defendant does not dispute Kurlinski's diagnosis of fibromyalgia or the ALJ's determination that it is a severe impairment. Defendant argues that the ALJ is not obligated to accept Kurlinski's subjective complaints simply because of a fibromyalgia diagnosis.

(1:07CV3726)

significant problem for her to be gainfully employed." (Tr. 471.) The ALJ found that Dr. Bullard's opinions were "unpersuasive" and "do not have any probative weight" because "[h]is opinions are not supported by the objective clinical signs or findings obtained at the time of his clinical examinations . . . ." (Tr. 31.)

Dr. Atreja noted on December 9, 2005, that Kurlinski "is suffering form severe medical issues that prevent her from walking long distance or working" and diagnosed Kurlinski with fibromyalgia. (Tr. 549 & 598.) Dr. Atreja also noted on January 20, 2006, that Kurlinski's "symptoms are constintent [sic] with fibromyalgia syndrom [sic]." (Tr. 593.) The ALJ found that Dr. Atreja's opinions lacked any probative weight because Kurlinski's "gait was normal" and "reflexes were normal and symmetric and her sensation was grossly intact." (Tr. 31.)

Dr. Mossad noted on May 15, 2006, that Kurlinski "has extreme limitations in the the [sic] ability to walk due to multiple medical problems." (Tr. 550.) Dr. Mossad also noted that Dr. Wilke, a rheumatologist, diagnosed Kurlinski with fibromyalgia. (Tr. 556.) The ALJ found Dr. Mossad's opinions "lack any probative weight . . . because they are not supported by evidence submitted in conjunction with these reports that confirms the degree of alleged limitations." (Tr. 31.)

Additionally, rheumatologists Drs. Wilke and Wisnieski both diagnosed Kurlinski with fibromyalgia on September 1, 2005 and April 29, 2006, respectively. (Tr. 533 & 553.) These diagnoses are significant because fibromyalgia is considered a rheumatic disease because it affects the joints and muscles. Therefore, Drs. Wilke and Wisnieski are specialists in the type of condition at issue in this case — fibromyalgia.

(1:07CV3726)

### 2. Fibromyalgia

An ALJ's consideration of a claimant's complaints of pain and limitations resulting from his or her fibromyalgia cannot reasonably be grounded in an assessment of objective medical evidence alone. Such an assessment would be considered "nonsensical" because objective medical evidence "is generally lacking with fibromyalgia patients." *Canfield v. Comm'r of Soc. Sec.*, 2002 WL 3123578, at *1 (E.D. Mich. Sept. 12, 2002). Thus, proper consideration of a claimant's complaints of pain and limitations resulting from fibromyalgia must include a thorough assessment of the claimant's subjective complaints.

Accordingly, the Sixth Circuit has "recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243. Individuals suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). Consequently, "[t]here are no objective tests which can conclusively confirm the disease." *Id.* at 818. Rather, the standard for diagnosing fibromyalgia in the Sixth Circuit includes testing a series of focal points for tenderness and ruling out other possible conditions through objective medical and clinical trials. *Id.*; *Rogers*, 486 F.3d at 244.

While the Court does not require a perfect opinion, it does ask for a logically consistent one. See *Wilson*, 378 F.3d at 544-46 (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject

-8-

(1:07CV3726)

the treating physician's opinion); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

In the instant case, the ALJ determined that Kurlinski's fibromyalgia qualifies as a severe impairment at Step Two of the sequential analysis. (Tr. 20.) The ALJ cited directly to, and relied upon, Drs. Atreja and Wilke's opinions when he made that determination. (Tr. 20.) Curiously, the ALJ later found Dr. Atreja's opinion lacked any probative weight even though the ALJ had previously relied upon Dr. Atreja's diagnosis of fibromyalgia. The Court cannot reconcile this schizophrenic application of Dr. Atreja's diagnosis.

The ALJ also discounted the above mentioned treating physicians' opinions because they were not supported by the "normal" and "objective" medical findings contained throughout the record. The ALJ referenced and relied upon the "normal" findings of physicians that examined Kurlinski in 2004 and who were not rheumatologists. The Sixth Circuit has ruled that fibromyalgia cannot be confirmed by objective tests and is a rheumatic disease. Moreover, given that a rheumatologist did not diagnose Kurlinski with fibromyalgia until September 2005, it is not surprising that Kurlinski's earlier medical examinations did not present a diagnosis of fibromyalgia. *See Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003) (observing that "[f]ibromyalgia is an 'elusive' and 'mysterious' disease" that causes "severe musculoskeletal pain"). As a result, the ALJ's reliance upon "normal" findings bore little relevance to Drs. Wilke, Wisnieski, and Atreja's diagnoses of fibromyalgia. *See Rogers*, 486

(1:07CV3726)

F.3d at 245 ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant").

On remand, the ALJ must re-evaluate the opinions of Kurlinski's treating physicians, in accordance with the Sixth Circuit's standard for properly assessing impairments allegedly caused by fibromyalgia, as set forth in *Rogers*.

### B. The ALJ Failed to Properly Evaluate Kurlinski's Credibility

It is not the function of a reviewing court to determine the credibility of the claimant. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed.Appx. 393, 395 (6th Cir. 2004) (citing *Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

When an individual alleges disabling symptoms, 20 C.F.R. § 416.929 requires the ALJ to follow an outlined process for evaluating these symptoms. First, the ALJ must determine whether objective medical evidence supports the claimant's allegations regarding the disabling effects of the impairment. *Id.* If the ALJ finds that the objective medical evidence does not support the claimant's allegations, then the ALJ may not simply reject the claimant's statements, but must consider them in light of the entire record. *Id.* In assessing the credibility of statements, the ALJ must look to the relevant evidence in the record. *See* SSR 96-7p. In

(1:07CV3726)

addition to the medical evidence, the ALJ should consider seven factors, as they may be relevant to a particular claim.  The seven factors are: (1) individuals daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c); SSR 96-7p.  Generally, the ALJ need not analyze all seven factors, but should make clear that he considered the relevant evidence.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).  These seven factors, however, are highly relevant to a claim involving fibromyalgia.

The credibility determination must contain specific reasons for the finding, "supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight."  SSR 96-7p; *see also Cross*, 373 F. Supp. 2d at 733.  Additionally, SSR 96-7p instructs, "The finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."

According to 20 C.F.R. § 402.35(b)(1), Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the Social Security

-11-

(1:07CV3726)

Administration and "are binding on all components of the Social Security Administration." *Sykes v. Apfel*, 228 F.3d 259, 271 (3d Cir. 2000); *see also Wilson*, 378 F.3d at 544 (noting that a federal agency is obliged to abide by the regulation it promulgates). In *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), the Sixth Circuit made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the testimony lacked credibility.

Due to the evasive nature of fibromyalgia, subjective pain complaints play an important role in the diagnosis and treatment of the condition, therefore determining and providing justification for discounting a claimant's statement assumes paramount importance. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985). For this reason, the seven factors listed in 20 C.F.R. § 416.929(c) are virtually the only means of corroborating allegations of pain.

The Court finds the ALJ's credibility analysis as a whole, insufficient for assessing the credibility of a claimant diagnosed with fibromyalgia, an impairment the ALJ deemed severe that rarely manifests itself through objective evidence. The ALJ thoroughly examined the objective medical evidence. He, however, addressed only two of the seven subjective factors in his opinion. For example, the ALJ briefly mentioned Kurlinski's medications, but did not discuss Kurlinski's resulting benefits or adverse side affects of those medications. (Tr. 30.) The ALJ also discussed what types of treatment Kurlinski had not received. The ALJ did mention subjective statements of symptoms Kurlinski made to doctors and the doctors' impressions of those statements.

(1:07CV3726)

The first two factors of the seven listed above, which the ALJ neglected to discuss, are essential to an evaluation of a fibromyalgia claimant's credibility. The record disputes Kurlinski's contention that the ALJ discussed "none" of the seven factors; however, the ALJ's treatment of the seven factors was, nonetheless, insufficient. *See* ECF No. 17 at 9.

Kurlinski provided several pages of testimony during the hearing regarding her daily activities and location, duration, frequency, and intensity of her pain. *See* (Tr. 712-26.) The ALJ's discussion of this testimony is crucial for a proper determination of Kurlinski's credibility. Unfortunately, the ALJ did not discuss or analyze Kurlinski's testimony in his opinion.

On remand, the ALJ shall evaluate the seven factors listed in 20 C.F.R. § 416.929(e) with an eye towards refuting or corroborating Kurlinski's allegations of pain.

### C. Re*a*ssessment of Kurlinski's Residual Functional Capacity is Required

Kurlinski objects to the ALJ's RFC assessment. The Court agrees that the ALJ did not correctly assess Kurlinski's RFC but for reasons different from those asserted by Kurlinski.

Because the ALJ did not apply the proper legal standards for evaluating Kurlinski's treating physicians' opinions and her subjective complaints, the Court finds those determinations were insufficient to constitute substantial evidence. It follows therefore, that the ALJ's assessment of Kurlinski's RFC is flawed because the RFC is based upon "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). Accordingly, the ALJ must reassess Kurlinski's RFC after proper reconsideration of the weight given to her treating physicians' opinions and her credibility. Once the new RFC finding has been made, then the ALJ may continue the sequential analysis accordingly, *e.g.*, posing an appropriate hypothetical to the

-13-

(1:07CV3726)

vocational expert in support of a disability determination at either Step Four or Step Five.

### D. Kurlinski's remaining Issues

In light of its decision to remand the matter, the Court addresses Kurlinski's two remaining issues in hopes of providing guidance to the ALJ on remand.

#### 1. The ALJ's Finding that Kurlinski's Mental Impairment and other Physical Impairments are not Severe does not Amount to Reversible Error

Kurlinski argues that the ALJ erred by failing to apply the proper legal standard in determining that Kurlinski's mental impairment and various physical impairments were "severe" at Step Two of the sequential analysis. Additionally, Kurlinski argues that the ALJ inappropriately relied upon State Agency reviewing psychologists. In the Sixth Circuit, the severity determination is "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* The goal of the test is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).

The Court's scrutiny of the ALJ's decision reveals that the ALJ applied the correct legal standard in his Step Two analysis. In accordance with SSR 96-6p, a review of the record as a whole compels a finding that the ALJ relied upon appropriate legal standards to reach his determination that Kurlinski's mental and other physical impairments were not severe.

Even assuming *arguendo*, Kurlinski's arguments are merely academic. The ALJ specifically found at Step Two that Kurlinski had several severe impairments, *e.g.*, fibromyalgia,

-14-

(1:07CV3726)

degenerative disc disease and facet arthritis of the lumbar spine, degenerative disc disease of the cervical spine, and right lateral epicondylitis. (Tr. 20.) Kurlinski, therefore, cleared Step Two of the analysis, mandating the ALJ to consider both Kurlinski's severe and non-severe impairments in the remaining steps of the sequential analysis. In his written opinion, the ALJ pledged that "[i]n making [the RFC] finding, the undersigned has considered all symptoms . . . ." (Tr. 27.) (Emphasis added). That the ALJ did not find Kurlinski's mental impairment and other physical impairments to be severe at Step Two is a nullity without a showing that the ALJ failed to consider the non-severe impairments. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir.1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe). The Court finds no error in the ALJ's decision on this point.

### 2. The ALJ Fully and Fairly Developed the Record

Kurlinski argues that the ALJ should have re-contacted treating physicians to clarify reports and information in order to fully and fairly develop the record. Kurlinski directs the Court to several Agency regulations and numerous cases (none from the Sixth Circuit) that stand for the general proposition that an ALJ should contact a physician if there are any problems or questions with their reports or opinions. The Court agrees with these regulations and cases that require such additional contact when the reports and opinions are not clear or are otherwise ambiguous. That is not the case here. The reports and opinions of the physicians that Kurlinski claims the ALJ should have re-contacted are clear and unambiguous. For example, Dr. Bullard clearly states that, "I was unable to determine the origin of what [her symptoms] were, . . . they

-15-

(1:07CV3726)

most likely were a neuromuscular disorder of undetermined type." (Tr. 471.) Dr. Bullard, in describing Kurlinski's inability to walk without a walker and continued multifocal pain, unambiguously prefaced this description with, "She tells me that . . . ." This phrase conveys without question statements made by Kurlinski to Dr. Bullard, rather than an objective medical opinion based upon medical tests.  (Tr. 471.)

The record reveals no reason for the ALJ to have re-contacted Kurlinski's treating physicians.  Rather, the ALJ fully and fairly developed the record and Kurlinski's complaint is without merit.

### IV.  Conclusion and Order of Remand

The ALJ's failure to follow the standard established by Sixth Circuit in *Rogers* prevents this Court from finding that the ALJ's decision is supported by substantial evidence.  For the reasons provided above, the Court finds that the ALJ applied incorrect legal standards in the evaluation of medical opinion evidence and in determining Kurlinski's credibility.  The Court orders that the ALJ's decision that Kurlinski's testimony is not credible and that her treating physicians' opinions lack any probative weight be reversed and the matter remanded, pursuant to the Fourth Sentence of 42 U.S.C. § 405(g) with instructions that, upon remand, the ALJ evaluate Kurlinski's credibility and the medical opinion evidence in a manner consistent with this opinion and Sixth Circuit law, in order to properly determine whether Kurlinski's testimony is credible and what weight, if any, should be given to the opinions of her treating physicians.

Accordingly, since the ALJ's assessment of Kurlinski's residual functional capacity is driven by his consideration of *all* of the relevant medical and other evidence, his RFC finding

(1:07CV3726)

and its use in concluding that Kurlinski could perform her past relevant work are flawed and must be revisited. On remand, should the ALJ find any of Kurlinski's impairments to be severe, he is hereby ordered to also consider all impairments, even those found to be non-severe in his analysis post-Step Two, in accordance with SSR 96-8p.

The Court does not decide whether substantial evidence exists in the record upon which to award benefits. Instead, the Court finds only that the ALJ did not conduct the proper analysis based upon the application of appropriate legal standards for his denial of benefits decision.

The Court finds the remainder of Kurlinski's claims are not well taken and declines Kurlinski's request for remand of those claims pursuant to Sentence Four of 42 U.S.C. § 405(g), for additional consideration by the Social Security Administration.

This matter is terminated on the docket of this Court.


IT IS SO ORDERED.


Dated: February 27, 2009                /s/ Benita Y. Pearson
                                        United States Magistrate Judge